UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BEVERLY PAGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:15-cv-142 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

An administrative law judge denied Beverly Page's application for disability insurance benefits and supplemental security income. Page argues, among other things, that the ALJ's decision should be reversed because she erred in step three by finding that Page's impairments do not meet or equal a listed impairment. I agree with Page. Because the ALJ failed to adequately address whether Page's back problems and/or combined impairments meet or equal a listed impairment at step three, I will remand the case for further analysis and development of the record.

## BACKGROUND

At the time of Page's hearing before the ALJ on October 24, 2013, she was a 46-year-old high school graduate who stood 5'3" tall and weighed 108 pounds. (DE 12 at 55.) She was unemployed and last worked in June 2009, when she quit a four-year stint in a factory inspecting mobile homes. (*Id.* at 57.) Prior to that, she had worked as a line

worker, a painter, a cleaner, a spot welder, a production assembler, a forklift driver, a group leader, and a machine operator. (*Id.* at 29, 62.)

Page stopped working in June 2009 because she "kept getting worse, the breathing and trying to do things" and because "they just kept sending [her] for more testing and more things going on." (*Id.* at 57.) She filed for disability benefits and supplemental security income in 2012 alleging an onset date of June 25, 2009. (*Id.* at 169–70.) At the hearing, the ALJ heard testimony from Page and from a vocational expert. (*Id.* at 53.) Page testified that she suffered from chronic obstructive pulmonary disease (COPD), asthma, fibromyalgia, tension headaches, panic attacks, carpal tunnel syndrome, and pain between her shoulder blades and in her neck, elbows, wrists, lower back, hips/posterior, and knees. (*Id.* at 62–80.) She also testified that she had trouble reaching above her head and in front of her, numbness and weakness in her hands, difficulty walking for any sustained period because of her COPD, tingling and burning in her arms, and weakness in her legs, and difficulty sitting for sustained periods because of pain in her hips. (*Id.* at 62–63, 69–70, 79.) Page also told the ALJ that she was taking prescription medication for fibromyalgia, COPD, asthma, pain, and anxiety/depression and that she was taking over the counter medication for her tension headaches. (*Id.* at 66–69, 76.)

The ALJ issued a decision denying benefits. (*Id.* at 23-50.) The ALJ found that Page met the insured status requirements of the Social Security Act and that she has not engaged in substantial gainful activity since June 25, 2009, the alleged onset date. (*Id.* at

25.) At step two, the ALJ concluded that Page had the following severe impairments: COPD/asthma, fibromyalgia, cervical spondylosis (neck arthritis), depression, and panic disorder without agoraphobia. (*Id.*) The ALJ also found that Page suffered from tension headaches and carpal tunnel syndrome but that they are non-severe impairments. (*Id.* at 25–26.) At step three, the ALJ concluded that Page does not have an impairment or combination of impairments meeting or medically equaling a listed impairment, including, most relevant to this appeal, Listing 3.02 (chronic pulmonary insufficiency) and the section 1.01 listings (musculoskeletal impairments). (*Id.*)

At step four, the ALJ found that Page had the capacity to perform "sedentary work," as defined in the regulations, but with the following limitations:

> only occasional climbing of ramps/stairs, balancing, stooping, crouching, kneeling and crawling and never climbing ladders, ropes, or scaffolds. The claimant also needs to avoid concentrated exposure to pulmonary irritations (i.e. fumes, odors, dusts, gases and poorly ventilated areas), extreme cold/heat/humidity, hazards (i.e. unprotected heights and dangerous unguarded machinery), bright and/or flashing lights and very loud noise.

(*Id.* at 28-29.) In addition, the ALJ found mental health limitations, specifically:

> the claimant retains the capacity to perform simple, routine and repetitive tasks involving low stress jobs consistent with unskilled work and [to] sustain and [] attend to such tasks throughout the workday, but cannot perform complex or detailed tasks. Definition of the term low stress jobs is no more than occasional decision-making or more than occasional changes in the work setting.

(*Id.* at 29.) At step five, the ALJ found that Page could not perform any past relevant work but that there was a sufficient number of jobs in the national economy that she could perform. (*Id.* at 41.)

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 6-9.) Page timely sought review of that decision by filing this case.

## **DISCUSSION**

Page challenges two components of the ALJ's step three analysis. (DE 19 at 15-19.) At step three, a claimant is presumed disabled and entitled to benefits, if she shows she has an impairment that meets or equals the criteria for an impairment found in the Listing of Impairments or if her "impairment is accompanied by symptoms that are equal in severity to those described in a specific listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(a)). In determining whether a claimant's condition meets or equals the criteria for a listed impairment, "the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Id.* (internal citations omitted).

Page argues that the ALJ's finding that Page's COPD did not meet or equal the severity in Listing 3.02 was not supported by sufficient evidence because two of four evaluations of Page's pulmonary functioning placed her within the listing's criteria, and one evaluation put her just outside the range. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a

4

conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Review of the ALJ's findings is deferential. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). "Although this standard is generous, it is not entirely uncritical and the case must be remanded if the decision lacks evidentiary support." *Id.* (internal quotation marks and citation omitted). To determine whether there was substantial evidence, I must review the record as a whole but cannot reweigh the evidence or substitute my judgment for the ALJ's. *Id.*

Page's pulmonary functioning was first measured on March 13, 2012, via a forced expiratory volume in one second ("$FEV_1$") test. (DE 12 at 467, 469.) Although the results of that test were below the maximum value provided in the listing for a person between 61 and 63 inches tall (1.15 liters) and indicated a "[s]evere airway obstruction" and reduced lung volumes consistent with COPD, the test was administered just once (pre- and post-bronchodilator), instead of three times as required by the regulations. (*See id.* (showing Page's highest post-bronchodilator $FEV_1$ was 1.11 liters); 20 C.F.R. § 404(P), App. 1, ¶ 3.00(E).) As a result, the results of this test support neither a finding that Page's pulmonary impairment meets the listing criteria nor the ALJ's determination that it does not.

Page's pulmonary functioning was measured again on March 23, 2012. On that day, the best of three $FEV_1$ tests met the criteria in the listing. (See DE 12 at 381; 20 C.F.R. § 404(P), App. 1, ¶ 3.02, Tbl. I.) The record of the testing notes that Page "maybe [gave a] poor initial effort," but it does not say whether that refers to the first

5

complete test (i.e., a pre- and a post-bronchodilator measurement) or all three pre-bronchodilator measurements. (DE 12 at 381.) Assuming that Page's initial effort, if poor, did not affect the overall validity of the test, this is the sole measure of Page's lung function that clearly supports a finding that her impairment meets or equals the criteria in the Listing of Impairments. This finding is somewhat bolstered by x-rays taken a few days later, on March 29, 2012, which showed "hyperinflation, suggestive of some degree of COPD." (*Id.* at 471.)

Page's pulmonary functioning was measured a third time on April 17, 2012, and was better than the criteria provided in the listing. (*See id.* at 508; 20 C.F.R. § 404(P), App. 1, ¶ 3.02, Tbl. I.) Page's $FEV_1$ values on the first two tests met the criteria for her height, and her $FEV_1$ value on the last test was only 0.01 liter above the 1.15 liter limit. (DE 12 at 508 (showing post-bronchodilator $FEV_1$s of 1.07, 1.14, and 1.16 liters).) As a result, while this series of measurements does not support a finding that Page's impairment meets or equals the listing criteria, it also does not strongly support the ALJ's determination that Page's COPD does not meet or equal the criteria.

The last evaluation of Page's pulmonary functioning in the record took place on May 7, 2012 and was an arterial blood gas study, which measures the amount of oxygen and carbon dioxide in arterial blood. (*Id.* at 530.) The results of that test indicated that Page's pulmonary function was significantly better than the listed criteria. (*See id.* (showing partial pressure of oxygen of 69 mm Hg and partial pressure of carbon dioxide at 48.8 mm Hg.) This result strongly supports the ALJ's finding.

On this record, I cannot say that the ALJ's decision with respect to Listing 3.02 was not supported by sufficient evidence. It's a close call, but Page's pulmonary functioning was measured four times, yet only one test satisfied the listing criteria—and recall that Page may have given a poor initial effort on that test. Nor has Page's briefing or my own review of the record uncovered other evidence that shows Page's COPD equaled the listing. Page argues that records from a June 6, 2013 emergency room visit show that her breathing problems were as severe as the listing, but her breathing problems at that time were exacerbated by pneumonia, a condition for which she was subsequently treated. (*See* DE 19 at 11–12, 17–18; DE 12 at 734–37; *see also* DE 12 at 651 (record reporting that Page's lungs were cleared and had "[n]o acute inflitrates, airspace consolidation, . . . or active pulmonary process" on July 31, 2013).) In short, there was enough "relevant evidence as a reasonable mind might accept as adequate to support" the ALJ's decision that Page's COPD did not met or equal a listing. *See Nelms*, 553 F.3d at 1097(quoting *Richardson,* 402 U.S. at 401).

If breathing problems were all there was to Page's application for benefits, I would affirm the ALJ's decision. But Page also challenges the ALJ's finding that her back problems do not meet or equal a listed impairment. In step three, the ALJ wrote just two sentences justifying this determination:

> Medical evidence related to the claimant's back . . . does not support a finding that she is unable to ambulate effectively, as defined within Listing 1.00B2b or unable to perform fine/gross movements effectively as defined within Listing 1.00B2c[.] (Exhibits 11F; 20F). In addition, the medical evidence does not

7

> support criteria contemplated within Listing 1.00 (musculoskeletal) for any of the listed conditions.

(DE 12 at 27.) Page argues that this paragraph is insufficient because the ALJ was required to mention Listing 1.04 (Disorders of the Spine) and to assess Page's back problems in the context of that particular listing. (DE 19 at 16–17.)

In response, the Commissioner argues that Page bears the burden of showing that her lower back problems meet or equal the requirements of Listing 1.04(A) and that she failed to do so. I disagree. The listing requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss. . . accompanied by sensory or reflex loss and . . . positive straight-leg raising test (sitting and supine)[.]" 20 C.F.R. § 404(P), App. 1, ¶ 1.04(A). The record here includes a report from a lumbar MRI conducted on February 27, 2013, showing a "tiny diffuse disc bulge, eccentric leftward . . . encroach[ing] on the inferior aspect of the left neural foramen and abuts the exiting left nerve root." (DE 12 at 608). The record also includes evidence of "axial low back pain radiating into the mid left thigh[,]" numbness and tingling in Page's lower left leg, and "decreased strength, range of motion and flexibility in [the] trunk[.]" (*Id.* at 609 (February 25, 2013 report); *see also id.* at 594 (June 13, 2013 physical therapy report describing lower back pain radiating into hips).) Finally, the record documents "diffusely decreased" sensation in Page's left leg, the absence of reflexes in both Achilles distributions, and a positive straight leg raise test on the left side, in a seated position. (*Id.* at 609.)

Notwithstanding this evidence, all of which was favorable to Page, the ALJ did not mention Listing 1.04(A) or delineate at step three why the evidence did not meet or equal the listing's criteria. (*See* DE 12 at 26–28.) Instead, she noted that there was no evidence of an inability to ambulate or perform fine and gross motor movements effectively, as defined in paragraph 1.00(B)(2)(b) and (c) and concluded with no additional analysis that evidence of Page's back problems did not "support criteria contemplated within Listing 1.00 (musculoskeletal) for any of the listed conditions." (*Id.*) Yet an inability to ambulate or perform fine and gross motor movements effectively is not a requirement of Listing 1.04, which means that the ALJ provided no support at this step for her conclusion that Page's condition didn't satisfy Listing 1.04(A). *See* 20 C.F.R. § 404(P), App. 1, ¶ 1.04(A); *see also Cinatl v. Astrue*, No. 10-C-2398, 2011 WL 1743408, at *13 (N.D. Ill. May 6, 2011) (finding that Listing 1.04(A) was not intended to require satisfaction of paragraph 1.00(B)). This is the type of perfunctory analysis that requires remand. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Nor is this deficiency alleviated by the ALJ's statements at step four that Page's lumbar MRI "do[es] not support more than [a] minimal deficit" and that "other than one or two references over a more than four-year period, there are no sustained findings for positive straight leg raising or for significant lower extremity deficits in standing/walking and engaging in postural maneuvers[.]" (*Id.* at 39-40.) As explained above, Listing 1.04 does not include among its criteria difficulty walking or an inability to walk. *See* 20 C.F.R. § 404(P), App. 1, ¶ 1.04(A). It also does not require deficits in

9

standing or in postural maneuvers, so a lack of evidence of such symptoms does not mean that Page's condition does not meet or equal the listing. *See id.*

In addition, although the ALJ characterizes Page's lumbar MRI as showing only a "minimal deficit," the opinion does not make clear why the MRI findings fall short of the criteria in the listing. (*See* DE 12 at 39–40.) There also is no indication that the ALJ assessed whether Page's symptoms *equaled* Listing 1.04(A), if they didn't meet it. (*Id.*) To be valid, such an assessment requires the opinion of an expert. *See Barnett,* 381 F.3d at 670; 20 C.F.R. § 404.1526. The Commissioner claims that the ALJ relied on the opinions of two consulting physicians in finding that Page's impairments did not equal a listing, but the record shows that the consulting physicians examined the record in 2012, before the records evidencing Page's lower back problems were created. (*See* DE 12 at 93–96.) This is another remandable error. *See Barnett,* 381 F.3d at 670.

Furthermore—and particularly because Page was close to qualifying as presumptively disabled at step three on the basis of her COPD alone—the ALJ should have sent the evidence of Page's lower back problems from 2013 to the consulting physician(s) to see her more recent lower back problems and resulting pain, were a tipping point causing the *combination* of her COPD, neck problems, lower back problems, and other impairments to equal a listing. *See* 20 C.F.R.§ 404.1526(b)(3). Instead, she just assumed that wasn't the case and didn't look into it further.

For these reasons, a remand is necessary to permit the agency to further assess the evidence and develop the record regarding whether Page's lower back problems,

alone or in combination with other impairments, meet or equal a listed impairment. Because these grounds already require remand, I will not address Page's remaining arguments, but the ALJ should consider and address them as appropriate.

## CONCLUSION

For the reasons stated above, this cause is **REMANDED** for further proceedings consistent with this order.

**SO ORDERED.**

ENTERED: September 22, 2016

s/ Philip P. Simon
CHIEF JUDGE
UNITED STATES DISTRICT COURT